Daniel, J.
I do not think that the exception to the deposition of Martha T. Frazer was well taken. The fact that she was one of the administrators of her father’s estate did not, of itself, render her incompetent to testify to the assent of herself and of her coadministrator to the legacy in respect to a portion of which the suit was brought.
In the case of Smith & wife v. Townes’ adm’r, 4 Munf. 191, which was an action of detinue brought by a legatee against a stranger, for the purpose of recovering a slave bequeathed to the legatee, this court held that it was competent for the plaintiff to prove by the executor, *14 (if he had no objection to being examined,) his assent to the legacy. I see nothing in the case under consideration to justify us in refusing to apply the same principle to the testimony of Mrs. Frazer. It is true that the recovery of the slaves in controversy from Bevill would be a satisfaction fro tanto of the claims of the appellant against the administrators, for Frederick R. Frazer’s share of the estate under his grand father’s will; and Mrs. Frazer’s testimony proves one of the important facts upon which the right to recover from Bevill must rest. Still, I do not perceive that Mrs. Frazer has any such interest in the event of the suit as can affect her competency as a witness. For even if the appellant, in the event of his failure to recover the slaves of Bevill, could be permitted to turn round and repudiate the grounds on which he sought that recovery, deny his own allegation of the assent of the administrators to the legacy, and seek to recover of the administrators on the ground of a devastavit or wrong, in improperly permitting a sale of the female slave Eliza, I do not see how Mrs. Frazer (from any fact disclosed in the record,) could be subjected to any liability. Apart from her own evidence there is nothing to show that the slave Eliza had ever been in her possession. The other evidence in the cause shows that the debt, in satisfaction of which the slave was sold, was originally a debt due by the estate. That upon the suing out of the original execution she paid one-half of the amount, and charged it to the estate in her administration account. That for the remaining half her brother Herbert Reese gave a delivery bond with Price Pollan as security, and made a like charge in his account. And that the sale was made under an execution which issued on a judgment on the delivery bond. The sheriff’s return states that this execution was levied “ on one negro girl held as the property of Herbert Reese;” and in his deposition the sheriff' states *15 that the girl “ was taken from the house and possession of Herbert Reese, and that he (Reese) stated at the time, that she belonged to his father’s estate.” And it appears from the separate administration accounts, that there was, at the time of the sale of the slave, a small balance (some sixty-five dollars) in the hands of Mrs. Frazer, and a much larger balance (some two hundred and twenty-eight dollars, after taking credit for the half of the original execution,) in the hands of Herbert Reese, arising from sales of the personal estate of the testator. In this state of facts, if there was any devastavit, or wrong, or illegal conduct, in allowing the sale of the slave for which a representative of this estate might be called to account, the liability therefor rested with Herbert Reese alone. He held the possession of the slave, and his office of administrator gave him a right to that possession ; and if he permitted it to pass from him, so as illegally and injuriously to affect others, without the knowledge or assent of Mrs. Frazer, no damage or loss arising therefrom can be visited upon her, it being well settled that one administrator cannot be charged with the wrong of his companion, or be made further liable than for the assets which came to his hands. Peter v. Beverley, 10 Peters’ R. 532; Morrow’s adm’r v. Peyton’s adm’r, 8 Leigh 54.
The decision of the suit could therefore neither increase nor diminish her liabilities, let it eventuate as it might, and she stood indifferent between the parties.
She states that in 1829 the slaves belonging to her father’s estate were divided between her and her brother; and that, in the division, the slave Eliza was (with others) allotted to her brother Herbert Reese. That the division was made by consent of parties, and that she and her brother each took possession of the slaves allotted to them respectively. In Drayton v. Drayton, 1 Desau. R. 557, executors who were residuary legatees divided the estate of their testator be *16 tween them. It was held that this was equivalent to payment of the legacies, and that the executors severally held their shares as legatees simply. This is precisely the case here; and the division in 1829 is, I think, equivalent to the most formal assent to the bequests to Herbert Reese and Mrs. Frazer. And it is well settled that an assent to a particular interest is an assent to the bequest over. 2 Lomax on Ex’ors 130; Lynch v. Thomas, 3 Leigh 682. And in the case of Acheson v. McCombs, 3 Ired. Ch. R. 554, it was decided that when by a will personalty is given to one, with remainder to another upon the happening of a certain event, and without any trust in the executor, the assent of the executor to the immediate legacy is an assent to the bequest in remainder; and such bequest becomes a legal estate upon the happening of the contingency.
The division of the slaves in 1829 operated then, as I conceive, as an assent by the administrators to the executory limitation in favor of Frederick R. Frazer; and I do not see how his title could be divested by sale under an execution issued, whether against the goods and chattels of Herbert Reese, or against the goods and chattels of the testator Frederick Reese.
It is argued that it is competent for an executor under certain circumstances to retract his assent to a legacy: And that Herbert Reese, by representing to the sheriff when he made the levy, that the slave belonged to his father’s estate, and by suffering her to be sold as such, must be taken to have retracted his assent, so far as this slave is concerned, and to have consented that she should be sold as the property of the estate. In a suit brought by Herbert Reese to recover this slave, such an argument would be entitled to much consideration, if indeed it would not be conclusive against his right to recover. To- permit him to recover from a bona fide purchaser under such circum *17 stances, would be to allow Mm to derive benefit from Ms own fraud. But the argument, as applied to tbe rights of Frederick B. Frazer is, I think, without force. It seems to be true, that whilst as a general proposition an assent once given to a legacy can never after-wards be retracted, there are exceptions to the rule: As when the assent has not been completed by payment, in the case of a general legacy, or possession, in that of a specific one, and its recall is not attended with injury to a third person, as to a bona fide purchaser from the legatee on the faith of such assent, it is said, that it is only reasonable, that the executor, under particular circumstances, should have the power of retracting it; as when he assents upon a reasonable ground for considering that the assets are sufficient to meet all demands, but unknown debts are unexpectedly claimed, which occasions a deficiency. 2 Williams on Ex’ors 849. It is obvious, however, that not one of the reasons on which the exception is based exists for applying the exception here, so as to affect the rights of the legatee in remainder. The division of the slaves in 1829, as before stated, was accompanied by immediate possession on the part of Herbert Beese ; and that possession enured at once to the benefit of the legatee in remainder.. And Herbert Beese, so far from being met by an expected deficiency of assets, in fact held in his own hands a large balance, more than ample to satisfy the execution. Ho retraxit of his assent to the legacy could, therefore, have divested the title of Frederick B. Frazer. It is to be observed also that whilst from the deposition of the sheriff it would seem that he, at the sale, regarded the execution under , which he sold as one against the estate of the testator, and treated the girl as the property of the estate, the execution was, as before stated, in fact against the goods and chattels of Herbert Beese and his surety in the delivery bond, Price Pollan, and the return states *18 a levy on the girl as the property of Herbert Reese. Whatever may have been the impressions of the sheriff, at the time of the sale, as to the legal effect of the process under which he was acting, or as to the title of the property sold to satisfy it, I think it clear that under the circumstances the purchaser could acquire nothing but the interest of Herbert Reese in the slave: And consequently, that Frederick R. Frazer had such an interest in the slave Eliza and her increase, as to entitle him, upon alleging and showing just cause to apprehend danger of their being eloigned, so as to jeopard his recovery of them when the time for the enjoyment of his legacy should arrive, to ask and have such orders in chancery as would be likely to insure the forthcoming of the property, on the happening of the contingency provided for in the will.
The counsel for the appellees, whilst he objected here to the jurisdiction, did not seem to lay much stress on the objection, his main argument being directed to the question of title ; and all objection to the want of power in the chancellor to act on the case made, is, I think, met and answered • by the decision of this court in the case of Chisholm v. Starke, 3 Call 25. In that case, the testator bequeathed his slaves to his wife, remainder to her children. The wife married again, and the second husband sold one of the slaves to a Iona fide purchaser, who had no notice of the right of those in remainder; and he, before receiving such notice, sold the slave to another person. The bill filed by the remaindermen in that case did not allege any purpose on the part of Chisholm to remove the slaves out of the state. It simply alleged that Richardson the second husband had frequently endeavored to sell the slaves as his absolute property; that he had sold one of them to Chisholm, who lived at a distance in the state; that he had 'attempted to sell others; and pretended that the, increase of the *19 slaves was his. The chancellor decreed that Richardson should give bond, conditioned for delivering to the plaintiffs the slaves in his possession and their increase, living at the death of his wife, and that Richardson and Chisholm should give bond for delivering the slave which had been purchased by Chisholm. Upon an appeal by Chisholm, this court reversed so much of the decree as required the bond of him, on the ground of his having stated in his answer, which was not disproved, that he was a fair purchaser for valuable consideration, without notice of the title of the appellees, and had sold the slave before suit brought, and before any notice of the appellee’s claim to or interest in the said slave; and ordered that the bill should be dismissed as to him, but decreed that Richardson should give bond for the forthcoming of all the slaves. The court evidently regarded the conduct of Richardson, in setting up an absolute title to the slaves, in selling one of them, and threatening and endeavoring to sell others, as ground sufficient to justify the requiring of a bond from him for the delivery of the property on the termination of the life estate ; and exonerated Chisholm, on the ground only of his being a purchaser without notice, and of his having sold again» before suit or notice of the title of those in remainder. The conduct of Herbert Reese, in permitting the slave to be sold under the circumstances shown in the case, was such, I think, as to have justified the court in requiring a bond from him; and with respect to Bevill, there is an absence of all the circumstances which induced the court, in the case of Chisholm, v. Starke, to excuse the purchaser: He does not in his answer deny notice of the division of the slaves, and of the claim of the appellant’s intestate : He does not deny having avowed the purpose (as charged in the bill) to use, control and sell and dispose of the slaves as his own absolute property: He does not deny that the appel *20 lant had good ground for believing that he would send the slaves out of the state. In his answer he simply states that the slave Eliza was levied on and sold to satisfy executions against the estate of Frederick Reese, and that he purchased her at the sheriff’s sale, and denies that "the plaintiff has any title whatever to the slaves; refers to the delay of the plaintiff in asserting his right, and says that he has no new cause, as he must, in any event, still be postponed until the life estate is extinguished. Independent of his failure to deny notice of the claim of the appellant, in his answer, the testimony in the cause renders it highly probable that he did have knowledge of the claim, and he is still in possession asserting right to treat the property as his own, free from all limitation.
I think that the Circuit court erred in dismissing the bill; and that it ought, instead thereof, to have made a decree defining the rights of the appellant in accordance with the foregoing views ; and' to have made such orders as were necessary to insure the forthcoming of the property on the happening of the contingency provided for in the bilk
The other judges’ concurred in the opinion of Daniel, J.
The decree was as follows .-
It appears-to the court that in February 1829 the slaves of the testator Frederick Reese were, by consent of the parties, divided between the appellees Herbert Reese and Martha T. Frazer; and that in the division the female slave Eliza was allotted to the said Herbert Reese. And the court is of opinion that said division operated as an assent by the administrators to the bequests in the will, as well in favor of Frederick R. Frazer as of the said Herbert Reese and Martha T. Frazer; and that the facts alleged in the *21 bill and proved by the evidence, were such as to entitle the said Frederick R. Frazer to ask and have from the appellee the said Herbert Reese, and the appellee Bevill, bond with sufficient security and in a proper penalty, conditioned for the forthcoming of the said slave Eliza and her descendants, on the happening of the contingency in the will of the testator mentioned : And that the Circuit court consequently erred in dismissing the bill. So much of the decree of the 31st day of March 1847, therefore, as dismisses the bill, is reversed with costs, &c. And the cause is remanded for further proceedings in conformity with the principles above declared-